**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RODNEY SULLIVAN,<br><br>Petitioner,<br><br>v.<br><br>JASON GARNETT, Chief of Parole of the Illinois Department of Corrections,<br><br>Respondent. | NO. 1:16-CV-06947<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Rodney Sullivan seeks habeas relief from his state court conviction. R. 1, Habeas Pet.[1] Because his claims have no merit, and because they have been procedurally defaulted, Sullivan's habeas petition is denied. No certificate of appealability shall issue from this Court.

## I. Background

When considering habeas petitions, federal courts must presume the correctness of factual findings made by the last state court to decide the case on the merits unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Sullivan

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241. Sullivan was released from prison in February 2024 and is serving a three-year term of mandatory supervised release until February 2027. *See* Illinois Department of Corrections, Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html; R. 137, State's Resp. Br. at 1 n.1; *see also Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a state prisoner released on probation is still "in custody" and thus can bring a habeas petition challenging his conviction).

has not provided clear and convincing evidence to rebut the presumption of correctness, so this factual background is taken from the findings set forth in the Illinois Appellate Court's order.

After a bench trial in 1999, Sullivan was found guilty of the first-degree murder of Leonard Smith and sentenced to 60 years' imprisonment. R. 138-1, State's Exh. 1, Ill. App. Ct. Direct Appeal Order ¶ 2; *People v. Sullivan*, 2014 WL 7342615, at *1 (Ill. App. Ct. Dec. 23, 2014). The state's primary witness at trial was Lewis Rogers, who testified that he, Sullivan, and Smith were close friends and members of the same gang. *Sullivan*, 2014 WL 7342615, at *1. The evening of Smith's murder, Smith approached Rogers (in earshot of Sullivan) and asked if Smith could package crack cocaine at Rogers's house. *Id.* Rogers said yes, and later that night, Smith came over. *Id.* The two packaged crack cocaine together, and then Smith left with the drugs. *Id.* Shortly after that, Sullivan came to Rogers's house and used his phone. *Id.* Sullivan then asked if Smith was still there. *Id.* Rogers told Sullivan that he had just left, and Sullivan laughed and said he was going to rob Smith. *Id.* Sullivan left. *Id.* Rogers looked out his back window and saw Sullivan and Smith standing near Smith's car. *Id.* Sullivan shot Smith, who stumbled and fell. *Id.* When the police inspected the scene, they found Smith's body several feet from the car, and they did not find any drugs in Smith's possession. *Id.* at *2.

Rogers testified that he did not call the police because he was scared that Sullivan would harm him. *Sullivan*, 2014 WL 7342615, at *2. When the police came to Rogers's house the next day, Rogers lied and said that he had not seen Smith in

several days. *Id.* The police questioned Rogers twice more. *Id.* The third time, when he was alone in a room at the police station, Rogers tried to slit his wrists and tied a string around his neck. *Id.* After Rogers was revived, he spoke to Officer Julius Nelson, whom Rogers knew and trusted. *Id.* at *2–3. Rogers then told the police that he saw Sullivan shoot Smith. *Id.* at *2. Afterwards, Rogers was taken to the hospital, where he told a social worker that he faked the suicide attempt so that the police would listen to him. *Id.* But at trial, Rogers testified that the suicide attempt was real. *Id.*

In 2010, the state trial court allowed Sullivan to file a late direct appeal because the delay was due to his counsel's ineffectiveness. *Sullivan*, 2014 WL 7342615, at *1. On direct appeal, Sullivan challenged the sufficiency of the evidence and his sentence. *Id.* The state appellate court rejected both arguments and affirmed his conviction and sentence. *Id.* at *5–6. Sullivan filed a petition for leave to appeal, which the Illinois Supreme Court denied in 2015. R. 138-6, State's Exh. 6, PLA; R. 138-7, State's Exh. 7, PLA Denial.

Sullivan filed a federal habeas petition in 2016, Habeas Pet., then moved to stay the proceedings so that he could file a state post-conviction petition, R. 5, Mot. to Stay. The previously assigned judge granted a stay. R. 9, 07/28/2016 Minute Order. Sullivan filed a *pro se* post-conviction petition in state court raising many of the same claims as raised in the federal habeas petition. R. 138-8, State's Exh. 8, State Pet. The trial court summarily dismissed the state petition, R. 138-9, State's Exh. 9, Ill. Trial Ct. Habeas Order, but the Illinois Appellate Court vacated the dismissal and

remanded because the trial court failed to follow statutory procedural rules, R. 138-10, State's Exh. 10, Ill. App. Ct. Habeas Order.

On remand, the State moved to dismiss the petition. R. 138-11, State's Exh. 11, State's Mot. to Dismiss. Sullivan filed an amended state post-conviction petition, R. 138-12, State's Exh. 12, Am. State Pet., and later supplemented his petition with additional claims, R. 138-13, State's Exh. 13, Addendum. The state moved to dismiss the amended petition. R. 138-2, State's Exh. 2 at 813, 10/19/2023 Hearing Tr. at JJJ-2:3–10. The same day that he filed his supplement, Sullivan also moved for post-conviction forensic testing under 725 ILCS 5/116-3, asking to test Smith's clothing for cocaine. R. 138-14, State's Exh. 14, Sullivan's Mot. for Forensic Testing. The trial court denied the motion. R. 138-2, State's Exh. 2 at 805, 09/07/2023 Hearing Tr. at III-5:16–20. The Illinois Appellate Court dismissed Sullivan's appeal of the denial because it was untimely. R. 138-16, State's Exh. 16, Ill. App. Ct. Forensic Mot. Order ¶ 12.

A few months later, in April 2025, Sullivan voluntarily withdrew his amended state post-conviction petition. R. 138-18, State's Exh. 18, Withdrawal Order. Because no state proceedings remained, the Court lifted the stay of the federal habeas proceedings. R. 130, 04/25/2025 Minute Order. Sullivan has not filed a new state post-conviction petition. *See People v. Sullivan*, 96-CR-10027-01 (Cook Cnty. Cir. Ct.), Dkt. at 2.

## II. Analysis

### A. Merits

Although the Court ordinarily determines whether a petitioner has exhausted his state court remedies before evaluating the merits of his claims, it is authorized to deny an unexhausted or procedurally defaulted claim on the merits. *See* 28 U.S.C. § 2254(b)(2); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018). Because Sullivan's claims clearly lack merit, the Court denies his petition.

#### 1. Perjury

Sullivan's first claim is that the state violated his right to due process by knowingly allowing Rogers to provide false testimony. Habeas Pet. at 5; R. 1, Habeas Pet. Appx. A at 1–2. He contends that Rogers perjured himself by first testifying that he saw Smith fall to the ground by his car after he was shot, and then later testifying that he saw Smith stumble away from the car before falling to the ground. Habeas Pet. Appx. A at 1–2. Sullivan also notes that Rogers testified that he had known Officer Nelson for two to three years, whereas Nelson testified that he had first met Rogers ten years prior. *Id.* at 2. And finally, Sullivan argues that Rogers made inconsistent statements about when he told the police that Sullivan shot Smith (before or after he was taken to the hospital after his suicide attempt). *Id.*

"The government violates a defendant's due process rights when it obtains a conviction through the knowing use of false testimony." *United States v. Cosby*, 924 F.3d 329, 336 (7th Cir. 2019). To prove this claim, Sullivan must show that "(1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should

have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the [fact finder]." *Id.* (cleaned up).[2] Sullivan has not satisfied any of the three elements.

First, Sullivan fails to show that Rogers's testimony amounted to perjury. At trial, Rogers testified about events that occurred years earlier. *Sullivan*, 2014 WL 7342615, at *1–3 (describing how the murder occurred in 1996 and the bench trial was in 1999). And Sullivan points to only minor inconsistencies in Rogers's testimony about the precise physical location and timing of events. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) (cleaned up). "It is not at all clear that [Rogers's] inconsistent testimony amounted to perjury, the willful assertion under oath of a false, material fact," rather than ordinary gaps in his memory. *Id.* (cleaned up); *see also United States v. Saadeh*, 61 F.3d 510, 522–23 (7th Cir. 1995) (concluding that inconsistencies in testimony about the dates of certain events were not perjury).

Second, even if Rogers's testimony constituted perjury, Sullivan has no evidence that the State knew or should have known of the perjury. And third, Sullivan does not show that the inconsistencies in Rogers's testimony affected the trial court's judgment. To make that showing, "the alleged perjured testimony must bear a direct

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

relationship to the defendant's guilt or innocence." *Saadeh*, 61 F.3d at 523 (cleaned up). But none of the inconsistencies Sullivan identifies directly relate to his guilt. For example, regardless of where exactly Smith fell after he was shot, Rogers unequivocally testified that Sullivan shot him. *Sullivan*, 2014 WL 7342615, at *1. So the location of Smith's body is an ancillary fact that does not directly relate to Sullivan's guilt. The other identified inconsistencies—about the length of Rogers's relationship with Officer Nelson and when Rogers ultimately implicated Sullivan in Smith's murder—do not relate to Sullivan's guilt at all. What's more, Sullivan's trial counsel thoroughly cross-examined Rogers about his inconsistent statements, allowing the trial court to assess Rogers's credibility. *See, e.g.*, R. 138-2, State's Exh. 2 at 156, Trial Tr. at TT-113:7–115:19. Sullivan thus fails to prove that there is any likelihood that the inconsistencies in Rogers's testimony affected the trial court's judgment. *See Saadeh*, 61 F.3d at 523–24; *Verser*, 916 F.2d at 1271. His perjury claim fails.

**2. Alleged Trial Court Errors**

Sullivan's second claim is that the trial court violated his due process rights by relying on Rogers's perjured testimony, finding that phone records corroborated that Sullivan was at Rogers's house the night of Smith's murder, asking questions about an unrelated case, and interjecting during defense counsel's cross-examination of Rogers. Habeas Pet. at 5; Habeas Pet. Appx. A at 3. But none of these actions constituted error, let alone violated Sullivan's right to due process.

As just described, Sullivan fails to prove that Rogers committed perjury, *see supra* Section II.A.1, so the trial court did not err by relying on Rogers's testimony.

Sullivan argues that the trial court improperly relied on Rogers's home phone records to corroborate Sullivan's presence the night of the murder. But Sullivan offers no evidence to show that the phone records were inaccurate or that it was improper for the trial court to rely on them. *See* Habeas Pet. Appx. A at 3 (first citing R. 138-2, State's Exh. 2 at 300, Trial Tr. at UU-20:7–21:15 (stipulation that a record keeper would have testified that phone calls were made to and from Rogers's home on the night of Smith's murder); and then citing Trial Tr. at TT-67:7–24 (Rogers's testimony that Sullivan arrived at his home and used his phone the night of the murder)). So this claim also lacks merit.

Finally, the trial court did not err by questioning witnesses two different times during the case. First, during defense counsel's examination of a detective at a pre-trial suppression hearing, the detective referred to an unrelated investigation into Sullivan for battery. Trial Tr. at TT-28:2–8. The trial court asked about the identities of the victims of the alleged battery. *Id.* at TT-28:9–12. This was permissible: "[s]o long as he remains impartial, a trial judge may question witnesses." *United States v. Kidding*, 560 F.2d 1303, 1314 (7th Cir. 1977); *see also Kurina v. Thieret*, 853 F.2d 1409, 1414–15 (7th Cir. 1988) (holding that the trial court did not violate due process when it asked a witness clarifying questions). And even if the trial court erred by asking the question, Sullivan fails to show that it prejudiced him; there is no evidence that the trial court considered the battery investigation or that it influenced its judgment. *See Kidding*, 560 F.2d at 1314 ("[I]n a non-jury case, questioning by the trial judge will rarely be prejudicial."); *see also Brecht v. Abrahamson*, 507 U.S. 619, 623

(1993) ("[T]he standard for determining whether habeas relief must be granted is whether the [due-process] error had substantial and injurious effect or influence in determining the … verdict." (cleaned up)).

Second, during defense counsel's cross-examination of Rogers during trial, the trial court interjected and asked several follow-up questions. Specifically, the court asked Rogers about the string that he tied around his neck at the police station (its length and where it came from); Rogers's intent when he used the string and a razor to harm himself; and whether Rogers had any scars on his wrist from the razor. Trial Tr. at TT-100:2–101:17. Again, this questioning is not improper because the trial court merely sought clarification from Rogers so that it could assess whether he attempted suicide. Sullivan does not show that the trial court's questioning was partial or biased. *See Kidding*, 560 F.2d at 1314. And even if it were, Sullivan fails to show that it had any effect on the trial court's judgment. *See id.* Thus, Sullivan's claims about alleged errors committed by the trial court have no merit.

### 3. Ineffective Assistance of Counsel

Sullivan's last claim is that his trial and appellate counsel on direct appeal provided ineffective assistance of counsel in violation of the Sixth Amendment. Habeas Pet. at 5; Habeas Pet. Appx. A at 3–4. To win on his ineffective-assistance claim, Sullivan must meet the two-element standard set forth in *Strickland*: he must show that counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Sullivan first argues that his trial counsel was ineffective because they failed to object to Rogers's perjured testimony and failed to impeach him. Habeas Pet. at 5; Habeas Pet. Appx. A at 3. But again, Sullivan does not show that Rogers committed perjury. *See supra* Section II.A.1. And Sullivan's trial counsel vigorously cross-examined Rogers about the inconsistencies in his testimony about the location of Smith's body. *See* Trial Tr. at TT-113:7–115:19. Sullivan thus fails to show that trial counsel's performance was deficient in this respect.

Sullivan next argues that trial counsel should have requested a hearing to assess Rogers's fitness as a witness given his suicide attempt. Habeas Pet. at 5; Habeas Pet. Appx. A at 3. But Sullivan does not show that such a request would have been successful. In Illinois, "[a] witness is competent to testify if he has the capacity to observe, recollect, and communicate." *People v. Williams*, 588 N.E.2d 983, 996 (Ill. 1991). The mere fact that Rogers had previously attempted to commit suicide, without more, does not show that he was unable to observe Smith's murder, remember the pertinent details, and communicate them at trial. *See id.* Because Sullivan does not present any evidence about Rogers's competency to testify at the time of trial, Sullivan fails to show that a request to assess Rogers's fitness would have succeeded. Trial counsel was thus not deficient for failing to make the request, nor was Sullivan prejudiced as a result.

Finally, Sullivan argues that trial counsel falsely described the caliber of weapon used to shoot Smith in their closing argument when there was no evidence in the trial record about the weapon's caliber. Habeas Pet. at 5; Habeas Pet. Appx. A at

3. But Sullivan fails to mention that the State's attorney immediately objected to defense counsel's statement, and the trial court sustained the objection. Trial Tr. at UU-33:15–22. So the statement was stricken from the record, the trial court did not consider it, and thus it did not affect the outcome of Sullivan's trial. *See United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) ("In a bench trial, we assume that the [trial] court was not influenced by evidence improperly brought before it unless there is evidence to the contrary.").

As for appellate counsel, Sullivan contends that they were ineffective on direct appeal for failing to raise the claims that Sullivan raises in this habeas petition. Habeas Pet. at 5; Habeas Pet. Appx. A at 4. But because none of Sullivan's claims have merit, his appellate counsel did not perform ineffectively by failing to raise them. *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

In sum, Sullivan identifies no instances of objectively deficient performance that prejudiced him at either the trial or appellate level. His ineffective assistance claims fail on the merits.

### B. Procedural Default

Even if Sullivan raised a meritorious claim, it would be procedurally defaulted. "The procedural default doctrine … normally will preclude a federal court from reaching the merits of a habeas claim when … the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred."

*Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). "A procedural default will bar a federal court from granting relief on a habeas claim *unless* the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Id.* (emphasis in original) (cleaned up). Here, Sullivan did not raise any of these claims on direct appeal in state court. *See* R. 138-3, State's Exh. 3, Sullivan Direct App. Br. at 2. He raised some of these claims in his state post-conviction petition, but he withdrew that petition in April 2025. Withdrawal Order. The one-year deadline to refile has passed, so Sullivan is procedurally barred from bringing his habeas claims in state court. *See* 735 ILCS 5/13-217; *People v. Simms*, 129 N.E.3d 1099, 1111–12 (Ill. 2018). And because he did not file a reply brief, he presents no cause-and-prejudice or miscarriage-of-justice arguments to avoid procedural default. *See* R. 139, 10/09/2025 Minute Order. Thus, even if Sullivan's claims had merit, procedural default bars the Court from granting his habeas petition.

### C. Certificate of Appealability

If Sullivan seeks to appeal the denial of the habeas petition, then he must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To obtain a certificate, Sullivan must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met only if "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up). For the reasons discussed in

this Opinion, Sullivan's arguments about Rogers's testimony, the trial court's actions, and the assistance of his counsel are clearly meritless, so Sullivan has not made the requisite showing. No certificate of appealability shall issue from this Court.

**III. Conclusion**

The petition, R. 1, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 2, 2026